UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
RUBEN CHAVEZ,

                                 Plaintiff,

                -against-

ROOSEVELT TROPICAL CORP. d/b/a
TROPICAL RESTAURANT and JAIME
"JIMMY" ILLESCAS, individually,

                              Defendants.
------------------------------------------------------------ x

**REPORT AND
RECOMMENDATION**

23-CV-2413 (EK) (PK)

**Peggy Kuo, United States Magistrate Judge:**

      Plaintiff Ruben Chavez ("Plaintiff") brought this action against Roosevelt Tropical Corp. d/b/a Tropical Restaurant ("Tropical Restaurant") and Jaime "Jimmy" Illescas ("Illescas") (collectively "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.* (*See* "Compl.," Dkt. 1.) Plaintiff has moved for default judgment against Defendants. ("Motion," Dkt. 21.) The Honorable Eric R. Komitee referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted in part and denied in part, as set forth below.

## BACKGROUND

### I.    Factual Background

      The following facts are taken from the Complaint (Dkt. 1), Plaintiff's Memorandum of Law in Support of Application for Default Judgment ("Pl. Mem.," Dkt. 21-1), and the Declaration of Diego Barros ("Barros Decl.," Dkt. 21-2), and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009).

      Tropical Restaurant is a New York corporation that operates as an Ecuadorian restaurant in

Woodside, New York. (Compl. ¶ 10.) In the three years prior to the filing of this suit, Tropical Restaurant had an annual gross volume of sales of at least $500,000. (*Id.* ¶ 13.)

Illescas is the owner of Tropical Restaurant. (*Id.* ¶ 14.) Illescas had the power to hire and fire employees, determine rates and methods of pay, determine work schedules, and supervise work of employees, including Plaintiff. (*Id.* ¶ 17.) Illescas personally hired and supervised Plaintiff. (*Id.* ¶ 16.)

Plaintiff worked for Tropical Restaurant in various capacities from approximately October 2009 to March 27, 2022. (*Id.* ¶¶ 18–19.) Plaintiff's responsibilities included working as a restaurant cashier, cooking and prepping food, serving food, bussing tables, and cleaning the restaurant. (*Id.* ¶¶ 18–19.) Plaintiff typically began work at 11:30 a.m., and worked until 11:00 p.m., Monday through Wednesday and Friday through Sunday, *i.e.*, a total of six days per week, sixty-nine hours per week. (*Id.* ¶ 20.) Plaintiff was paid a set amount on a weekly basis, regardless of the exact number of hours worked. (*Id.* ¶¶ 22–25; Barros Decl. ¶ 23.) From 2013 to 2016, Plaintiff was paid approximately $375 per week; from 2017 to 2018, Plaintiff was paid approximately $400 per week; and from 2019 to 2022, Plaintiff was paid approximately $500 per week. (Compl. ¶¶ 23–25; Barros Decl. ¶ 24.)

## II.  <u>Relevant Procedural Background</u>

Plaintiff filed the Complaint on March 29, 2023, alleging causes of action against Defendants for failure to pay minimum wages under the NYLL, failure to pay overtime wages under the FLSA and the NYLL, failure to provide spread of hours pay under Section 655 of the NYLL and the New York State Department of Labor Regulations, failure to provide wage notices under Section 195(1) of the NYLL, and failure to provide wage statements under Section 195(3) of the NYLL.

Defendants' counsel executed waivers of service on April 6, 2023, which had been sent to Defendants on March 29, 2023, setting a deadline to respond by May 29, 2023.[1] (Dkts. 8, 9.)

---

[1] Defendants' counsel in this action is E. Dubois Raynor, Esq. Attorney Raynor did not appear in this action on behalf of Defendants until April 29, 2024, when the Court granted his April 26, 2024 motion to appear *pro hac vice*. Before that, Plaintiff's counsel made filings on Attorney Raynor's behalf.

Defendants failed to answer or otherwise respond to the Complaint.  Plaintiff requested a Certificate of Default against Defendants (Dkt. 11), which the Clerk of Court entered on June 29, 2023.  (Dkt. 13.)  Plaintiff filed a motion for default judgment seeking a judgment against Defendants on July 27, 2023.  (Dkt. 16.)

On August 1, 2023, Tropical Restaurant filed a voluntary petition for bankruptcy under Chapter 11 (Dkt. 17-1), requiring an automatic stay of this action.  *See* 11 U.S.C. § 362 ("[A] petition filed under . . . this title . . . operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor . . . .").  The bankruptcy court dismissed the petition on November 21, 2023 for failure to file a list of creditors, and the Court lifted the stay.  (November 30, 2023 Order.)[2]

On February 23, 2024, Plaintiff's motion for default judgment was denied based on his failure to provide proof of damages, failure to file proof of mailing of the motion to the Defendants as required by Local Rule 55.2(c), and failure to present any legal analysis to establish Defendants' liability as a matter of law.  (January 29, 2024 Report and Recommendation; February 23, 2024 Order Adopting January 29, 2024 Report and Recommendation.)

Plaintiff filed a renewed motion for default judgment (the "Motion") against Defendants on March 20, 2024.  (Dkt. 21.)  Defendants have not responded to the Motion.  (Dkt. 20.)

## DISCUSSION

## I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for

---

[2] Defendants refiled a voluntary petition for bankruptcy on November 30, 2023, which was dismissed on March 11, 2024 for failure to be represented by counsel.  (Dkt. 21-7.).  The Court was not notified of this second petition until the renewed motion for default judgment was filed.  (Dkt. 21.)

an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must demonstrate proper service of the summons and complaint, *see Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013), and establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

In addition, the court must determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Klideris v. Trattoria*

*El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Jurisdiction and Default

### A.    *Subject Matter Jurisdiction*

The Court has original subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B.    *Service on the Defendants*

A defendant may waive service of a summons and complaint, upon receiving a copy of each. Fed. R. Civ. P. 4(d)(1).  Defendants have done so here.  (Dkts. 8–9.)

### C.    *Personal Jurisdiction*

New York has general jurisdiction over corporations formed under its laws and operating within the state.  N.Y. C.P.L.R. § 302(a)(1); *see also Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Because Defendant Tropical Restaurant is a New York corporation and waived service of the summons and Complaint, the Court has personal jurisdiction over Tropical Restaurant.  (Dkt. 4.)

New York has specific jurisdiction over individuals who "transact[] any business within the state" so long as "the cause of action arises from that transaction."  *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60).  Illescas owned and operated five Tropical Restaurant locations throughout New York and supervised Plaintiff, an employee of Tropical Restaurant, in New York.  (Compl. ¶¶ 14, 16.)  The FLSA and NYLL causes of action in this case arise from Illescas's transaction of business in New York.  Therefore, the Court has personal jurisdiction over Illescas.

### III.    <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2[3]</u>

As part of the Motion and in compliance with the Local Civil Rules, Plaintiff filed a Notice of Motion (Dkt. 21), *see* Local Civil Rule 7.1(a)(1); a memorandum of law in support of the Motion (Dkt. 21-1), *see* Local Civil Rule 7.1(a)(2); a copy of the Clerk's Certificate of Default against Defendants (Dkt. 21-5), *see* Local Civil Rule 55.2(b)(1); a copy of the Complaint (Dkt. 21-3), *see* Local Civil Rule 55.2(b)(2); a proposed judgment (Dkt. 21-11), *see* Local Civil Rule 55.2(b)(3); and proof of mailing the Motion papers to Defendant Tropical Restaurant's business address (Dkt. 22), *see* Local Civil Rule 55.2(c).  Plaintiff did not mail the motion papers to Defendant Illescas's residence as required by Local Civil Rule 55.2(a)(3) for individual defendants.  Nevertheless, I find this deficiency excusable; Defendants clearly had notice of the motion because they filed a motion for extension of time to file a response to the motion for default judgment, and their counsel filed a motion to appear *pro hac vice.* (Dkt. 23); *Gustavia Home, LLC v. Vaz,* No. 17-CV-5307 (ILG)(RER), 2019 WL 3752772, at *4 (E.D.N.Y. Aug. 8, 2019), aff'd, 824 F. Appx. 83 (2d Cir. 2020) (quotation omitted) ("[T]he Second Circuit has made it clear that the court has broad discretion to excuse noncompliance with Local Rules."); *see also Ass'n for Retarded Citizens of Conn., Inc. v. Thorne,* 68 F.3d 547, 554 (2d Cir. 1995) ("The district court's inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule.").

Plaintiff also submitted an affirmation that Illescas is not an infant, in the military, or an incompetent person.  (Dkt. 11-1); *see* Local Civil Rule 55.1(b)(1).  Thus, I find that Plaintiff has complied with the Local Civil Rules.

---

[3] Because the Motion was filed on March 20, 2024, references herein to the Local Civil Rules mean the prior Local Civil Rules that were in effect until June 30, 2024.

## IV.    Liability under the FLSA and NYLL

### A.    Statute of Limitations

The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies."  *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398, at *33 (E.D.N.Y. June 24, 2010)).  "The statute of limitations starts to run when the employee begins to work for the employer."  *Id.*  (citation omitted).  Under the NYLL, the statute of limitations is six years.  *See* NYLL §§ 198(3), 663(3).

Plaintiff commenced this action on March 29, 2023, alleging violations that occurred during his employment from 2009 to 2022.  (Dkt. 1; Compl. ¶¶ 23–25.)  Because Defendants have defaulted, the violations are willful and the three-year FLSA statute of limitations applies.  Plaintiff can recover under the FLSA for any claims that accrued starting on March 29, 2020.  Under the six-year NYLL statute of limitations, Plaintiff may recover for any claims that accrued starting on March 29, 2017.

### B.    Employment Relationship Under the FLSA

The FLSA is to be "construed . . . liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."  *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted).  To plead a cause of action under the FLSA, a plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-CV-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).  Courts in the Second

Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

### 1.    Whether Defendants Qualify as Employers

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).

### (a)    Tropical Restaurant

A corporate defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage. *See Santacruz v. Blok Chocolatier LLC*, 19-CV-544 (EK) (SJB), 2021 WL 4340963, at *3 (E.D.N.Y. Sept. 23, 2021), *R&R adopted*, 2021 WL 4341103, (E.D.N.Y. June 23, 2021).

### (i)    Enterprise Coverage Test

The enterprise coverage test evaluates whether the defendant's employees are engaged in commerce or in the production of goods for commerce, "or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i–ii); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Enterprises operating solely intrastate may still be engaged in interstate commerce if their employees "handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiff alleges that Tropical Restaurant earned at least $500,000 in annual revenue and that Tropical Restaurant is an employer engaged in interstate commerce and/or in the production of goods for interstate commerce. (Compl. ¶ 13.) Although Plaintiff does not allege additional facts, "it is reasonable to infer that the myriad goods necessary to operate a restaurant with an eat-in dining area . . . do not exclusively come from New York State . . . [and] that some of these materials moved or were produced in interstate commerce." *Fermin*, 93 F. Supp. 3d at 33.

(ii)    <u>Individual Coverage Test</u>

In the alternative, Tropical Restaurant also satisfies the individual coverage test. The individual coverage test considers the employment actions of each FLSA plaintiff to determine whether the plaintiff is "engaged in commerce" such that the employer is covered under the FLSA. *See Rowe*, 2019 WL 4395158, at *4. "According to the Department of Labor, individual employees are engaged in commerce 'when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles and including information and intelligence)' between states." *Klimchak v. Cardrona, Inc.*, No. 09-CV-4311 (MKB)(ARL), 2014 WL 3778964, at *6 (E.D.N.Y. July 31, 2014) (citing 29 C.F.R. § 779.103). Additionally, the tasks involving interstate commerce must be a "substantial part" of the employee's work. *Id.* at *6 (citing *Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000)).

Plaintiff alleges his "primary" duties at Tropical Restaurant were working as the cashier, preparing and serving food, bussing tables, and cleaning the restaurant. (Compl. ¶ 19.) It is reasonable to infer that a restaurant worker engaged in food service tasks handled tools and materials that were moved or produced in interstate commerce. *See Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015) (inferring that a diner's busboy "handle[d] goods or materials that have moved in interstate commerce"); *see also Rocha v. Bakhter Afghan Hall Kababs, Inc.*, 44 F. Supp. 3d 337, 346 (E.D.N.Y 2014) (collecting cases).

Thus, I find that Plaintiff's allegations establish he was "engaged in commerce" as a substantial part of his work, and that Tropical Restaurant is an employer under the FLSA.

(b)     Illescas

Illescas is also an employer under the FLSA.  An individual is an employer for FLSA purposes if that person "possess[es] control over a company's actual 'operations' in a manner that relates to a plaintiff's employment" such that the individual "directly affect[s] the nature or conditions of the employees' employment."  *Irizarry*, 722 F.3d at 109–10.  The analysis of whether an individual is an "employer" is also guided by the 'economic realities' test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984).  *Irizarry*, 722 F.3d at 110.  The factors that the Court may consider include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).  "The 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive."  *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

Plaintiff alleges that Illescas hired and fired employees, decided their work schedules, set their rates of pay, personally supervised them, and instructed them "on how to perform their jobs." (Compl. ¶ 17; Pl. Mem. at 9.)  These allegations closely track the *Carter* factors and reflect Illescas's control over the actual operations of Tropical Restaurant, as well as the nature and conditions of Plaintiff's employment.  I find, therefore, that Plaintiff has established that Illescas was an employer under the FLSA.

2.     Whether Plaintiff Was an Employee

An "employee" under the FLSA is broadly defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  In other words, "any individual whom an employer 'suffer[s] or

permit[s] to work'" is an employee. *Cabrera v. Canela*, 412 F. Supp. 3d 167, 178 (E.D.N.Y. 2019) (citing 29 U.S.C. §§ 203(e)(1), (g)). Plaintiff alleges that he was an employee of Defendants from 2009 to 2022, working as a cashier, busboy, cook, and waiter, among other roles. (Compl. ¶¶ 18-19.) Such allegations establish that Plaintiff was an employee under the FLSA.

### 3. Whether Any FLSA Exemption Applies

Finally, Plaintiff must show that he is not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. "Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement," *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), including if an individual is "employed in a *bona fide* executive, administrative, or professional capacity . . . " 29 U.S.C. § 213(a)(1). FLSA exemptions must be "narrowly construed." *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 395 (E.D.N.Y. 2013) (citing *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2nd Cir. 1991)).

Plaintiff had the title of "manager." (Compl. ¶ 19.) However, an employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

The Department of Labor sets forth four conditions to determine whether an individual is an "employee employed in a *bona fide* executive capacity." 29 C.F.R. § 541.100(a)(1). The individual must be "(1) [c]ompensated on a salary basis at not less than . . . [$844 per week]; (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). Salary basis refers to a weekly or less frequent payment "that is not subject to deductions based on the 'quality or quantity of the work performed.'" *Solis*, 938 F. Supp. 2d at 396 (citing 29 C.F.R. § 541.602(a)).

Plaintiff does not meet any of these requirements.  As such, Plaintiff is not exempt "from the FLSA's coverage as an executive employee," regardless of his title.  *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-CV-486, 2011 WL 1431978, at *3 (E.D.N.Y. Apr. 14, 2011); *see also Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *5 (E.D.N.Y. Mar. 30, 2022) (despite the title of "kitchen manager," plaintiff was not exempt from the FLSA).

## C.    Employment Relationship Under the NYLL

To prevail on a NYLL claim, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment."  NYLL § 190.  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014).  Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

As the NYLL and FLSA definitions of "employer" are coextensive, *see Fermin*, 93 F. Supp. 3d at 37, Defendants are Plaintiff's employers within the meaning of the NYLL.

## D.    Minimum Wage Claim

Plaintiff has brought a minimum wage claim under the NYLL for alleged violations occurring from 2017 to 2022.  (Compl. ¶¶ 23–25, 34.)  Under the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work.  NYLL § 652.  The applicable minimum wage in New York City depends on the size of the employer.  NYLL § 652(1)(a)(i) (distinguishing between "large employers" of 11 or more employees and "small employers" of 10 or fewer employees).

Plaintiff stated in his memorandum of law that 10 to 20 employees worked for Defendants. (Pl. Mem. 11.) However, Plaintiff included no information in the Complaint or in any declaration regarding Defendants' size. "A complaint cannot be amended merely by raising new facts . . . in plaintiffs' [motion] papers, and hence such new allegations and claims should not be considered in resolving the motion." *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004); *see also Murray v. United Parcels Service, Inc.*, No. 20-CV-1427 (MKB), 2022 WL 4468295, at *14 n.31 (E.D.N.Y. Sept. 25, 2022). Because Plaintiff failed to "state the number of employees who worked for Defendants" in the complaint, the Court will apply "the lower, small employer minimum wage rate." *Pinzon v. 467 Star Deli Inc.*, No. 22-CV-6864, 2023 WL 5334757, at *9 (S.D.N.Y. Aug. 18, 2023), *R&R adopted*, 2023 WL 5337617 (S.D.N.Y. July 31, 2023). The New York minimum wage for New York City businesses with ten or fewer employees was $10.50 per hour from December 31, 2016 through December 30, 2017; $12.00 per hour on and after December 31, 2017; $13.50 per hour on and after December 31, 2018; and $15.00 per hour from December 31, 2019 onwards. NYLL § 652(1)(a)(i).

Plaintiff was paid a weekly wage. (*See* Compl. ¶¶ 20–25.) As a restaurant worker covered by the New York Department of Labor's Hospitality Industry Wage Order, Plaintiff's regular hourly wage must be calculated by dividing his weekly rate by "the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.5(b). Because Plaintiff worked 69 hours per week, his hourly wage is calculated by dividing his weekly rate by 40 hours. (Compl. ¶¶ 20, 24.) From 2017 through 2018, Plaintiff was paid $400 per week; thus, Plaintiff's hourly rate was $10.00 per hour. (*Id.* ¶¶ 20, 24.) From 2019 to 2022, Plaintiff was paid $500 per week; thus, Plaintiff's hourly rate was $12.50 per hour. (*Id.* ¶¶ 20, 24.) These hourly rates are below the New York minimum wage required during that time:

| Time Period | Weekly Rate | Hourly Rate (Weekly Rate/40 hours) | New York Minimum Wage |
|---|---|---|---|
| Mar. 29, 2017–Dec. 31, 2017 | $400 | $10 | $10.50 |
| Jan. 1, 2018–Dec. 31, 2018 | $400 | $10 | $12.00 |
| Jan. 1, 2019–Dec. 31, 2019 | $500 | $12.50 | $13.50 |
| Jan. 1, 2020–Mar. 27, 2022 | $500 | $12.50 | $15.00 |

Thus, Plaintiff has established Defendants' liability for failure to pay minimum wages under the NYLL for the relevant time period.

### E.    *Overtime Claims*

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week . . . ." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.2.  To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of 40 hours of work in a given workweek, *Lundy v. Cath. Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201.  *See also Fermin*, 93 F. Supp. 3d at 44–45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiff alleges that throughout his employment, he routinely worked 69 hours per week but did not receive time-and-a-half compensation for the hours he worked over 40 hours each week. (Compl. ¶¶ 20, 22.)  I find that these allegations establish Defendants' liability for failure to pay Plaintiff overtime under both the FLSA and the NYLL.  *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over 40 hours a week without time-and-a-half compensation, subjecting defendants to liability under FLSA and NYLL on default).

### F.    Spread of Hours Claim

New York law requires employers to pay "spread of hours" wages.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ("An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage . . . for any day in which . . . the spread of hours exceeds 10 hours . . . .").  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  *Id.* § 146-1.6(a).  Although this provision only applies to those who are paid minimum wages, *see Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007), pursuant to the Hospitality Industry Wage Order, hospitality workers are entitled to spread of hours pay regardless of their regular rate of pay.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d).

"As a restaurant worker, Plaintiff indisputably worked in the hospitality industry," thus qualifying him for spread of hours wages.  *See Rowe*, 2019 WL 4395158, at *8.  Moreover, Plaintiff was paid less than the New York minimum wage.  Plaintiff alleges that during his employment, he worked 11.5 hours every day but did not receive any spread of hours pay.  (Compl. ¶¶ 21, 27.)  This allegation is sufficient to establish that Defendants did not comply with New York's spread of hours requirement for that period.  *Chen v. Y Café Ave B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *4 (S.D.N.Y. May 30, 2019).

### G.    Wage Notice and Wage Statement Claims

Plaintiffs allege violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions.  (Compl. ¶¶ 53–59.)  These provisions are also referred to as the Wage Theft Prevention Act ("WTPA"), which was enacted "to expand the rights of employees and to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein."  *Cuzco v. F & J Steaks 37th St. LLC*, No. 13-CV-1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014) (quoting Bill S8380–2009, Revised 06/29/10, Summary of Specific Provisions).  Section 195(1)(a) requires employers to provide employees at the time of hire with a wage

notice containing, *inter alia,* the rate of pay, the basis thereof, the pay schedule, and information identifying the employer in both English and the primary language of the employee.  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  NYLL §§ 198(1-b) and 198(1-d) impose statutory damages for violations of these provisions.

In order have Article III standing in federal court, plaintiffs must show that they suffered a concrete and particularized injury-in-fact.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992); U.S. Const. art. III, § 2, cl. 1.  Bare allegations of an "informational injury," unaccompanied by allegations of adverse effects or downstream consequences from failing to receive the required information, are insufficient to establish Article III standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021); *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022).  "In other words, [the plaintiff] must show that he has an 'interest in using the information . . . beyond bringing [his] lawsuit'" to establish an Article III injury-in-fact.  *Id.* (citing *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).

Before the Supreme Court's decision in *TransUnion LLC v. Ramirez*, courts within the Second Circuit found that bare allegations of WPTA violations satisfied the injury-in-fact requirement because a WPTA plaintiff identified "procedural deficiencies that entail a concrete risk of harm to an interest identified by the legislature."  *See, e.g.*, *Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18-CV-5422 (NSR), 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020), *abrogated by Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. Sept. 25, 2023); *see also Strubel v. Comenity Bank,* 842 F.3d 181, 189 (2d Cir. 2016) ("Where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient risk of real harm to the underlying interest to establish concrete injury without need [to] allege any additional harm beyond the one Congress has identified.").

In *Transunion*, however, the Supreme Court explicitly rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement when an informational statutory violation occurs, stressing that "an injury in law is not an injury-in-fact . . . ." *Id.* at 426–27 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation")).

Applying *Transunion*, a majority of courts in the Second Circuit that have considered WTPA standing have held "that a plaintiff lacks standing to recover for a wage notice or statement violation . . . when the plaintiff pleads nothing more than the statutory violation and a demand for damages." *Montalvo v. Paul Bar & Rest. Corp.*, No. 22-CV-1423 (JLR)(SN), 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 12, 2023) (collecting cases). Courts have required a plaintiff to "link" a defendant's failure to provide her with wage information to the failure to lawfully compensate her. *See Gaskin v. Brooklyn Suya Corp.*, No. 22-CV-5648 (ENV)(LB), 2023 WL 9232962, at *8 (E.D.N.Y. Oct. 26, 2023) (collecting cases).

In a handful of cases, however, courts have found that WTPA standing is established even without specific allegations of downstream harms. *See, e.g.*, *Bueno v. Buzinover*, No. 22-CV-2216 (PAE)(KHP), 2023 WL 2387113, at *3 (S.D.N.Y. March 7, 2023) (rejecting magistrate judge's recommendation that there was no standing and finding that harms resulting from wage notice and statement violations can be considered concrete "without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice" by considering the legislature's purpose in enacting the statute); *Bello v. Pro-Line Pumping Corp.*, No. 22-CV-4081 (RPK)(RML), 2023 WL 8260830, at *9 (E.D.N.Y. June 20, 2023) (bare assertion that plaintiffs never received wage statements and notices were sufficient to establish concrete harm and standing because they were accompanied by claims of wage theft, and "the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings").

While it may be evident from the pleadings that wage theft has occurred, it is not always the case that such theft flows from the informational deficiency of not receiving the wage notice or statements. It is possible for a plaintiff to have obtained knowledge of the information that would otherwise be in the required records through other means. And wage theft sometimes occurs even in the face of full knowledge. Thus, I agree with the majority line of reasoning. After *Transunion*, a bare allegation of a statutory violation no longer suffices to satisfy standing without an additional allegation of some link between the failure to provide wage notice or statements—with their concomitant information—and some concrete injury, such as the wage theft alleged elsewhere in the pleadings.

Here, Plaintiff merely alleges that Defendants failed to provide a wage notice or wage statements (*see* Compl. ¶¶ 1, 28, 55, 59), with no additional allegations linking this failure to any downstream harms to Plaintiff. I find these allegations insufficient to demonstrate injury for Article III standing, and therefore I find no liability for violations of NYLL §§ 195(1)(a) and 195(3).

## V.    **Damages**

### A.    *Minimum Wage Damages*

The total amount of underpayment for minimum wages is calculated by taking the difference in Plaintiff's regular hourly rate of pay and the New York minimum wage and multiplying it by 40 hours per week. NYLL § 663; *see Chen*, 2019 WL 2324567, at *3 (utilizing this method to calculate minimum wage damages). The New York minimum wage was $10.50 in 2017, $12.00 in 2018, $13.50 in 2019, and $15.00 from 2020. NYLL § 652.

| Time Period | Number of Weeks | Regular Hourly Rate | New York Minimum Wage | Hourly Underpayments | Weekly Underpayments (Hourly Underpayments x 40) | Total Underpayments |
|---|---|---|---|---|---|---|
| Mar. 29, 2017–Dec. 31, 2017 | 39 | $10.00 | $10.50 | $0.50 | $20.00 | $780.00 |
| Jan. 1, 2018–Dec. 31, 2018 | 52 | $10.00 | $12.00 | $2.00 | $80.00 | $4,160.00 |
| Jan. 1, 2019–Dec. 31, 2019 | 52 | $12.50 | $13.50 | $1.00 | $40.00 | $2,080.00 |

| Jan. 1, 2020–Mar. 27, 2022 | 116 | $12.50 | $15.00 | $2.50 | $100.00 | $11,600.00 |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total: | $18,620.00 |

Accordingly, I respectfully recommend that Plaintiff be awarded $18,620.00 in minimum wage damages under the NYLL.

### B. Overtime Damages

Under both the NYLL and FLSA, Plaintiff is entitled to an overtime premium for all hours worked over 40 hours at 1.5 times the greater of his regular rate of pay or the minimum wage. *See, e.g., Perez Campos*, 2018 WL 9945754, at *4, 8. Because Plaintiff was paid less than the minimum wage, his overtime rate is calculated using the New York minimum wage. The following chart shows the overtime wages owed to Plaintiff for all his hours worked over 40 per week:

| Time Period | Number of Weeks | New York Minimum Wage | Overtime Rate | Overtime Hours Worked Each Week | Total Unpaid Overtime |
| --- | --- | --- | --- | --- | --- |
| Mar. 29, 2017–Dec. 31, 2017 | 39 | $10.50 | $15.75 | 29 | $17,813.25 |
| Jan. 1, 2018–Dec. 31, 2018 | 52 | $12.00 | $18.00 | 29 | $27,144.00 |
| Jan. 1, 2019–Dec. 31, 2019 | 52 | $13.50 | $20.25 | 29 | $30,537.00 |
| Jan. 1, 2020–Mar. 27, 2022 | 116 | $15.00 | $22.50 | 29 | $75,690.00 |
| | | | | Total: | $151,184.25 |

Accordingly, I respectfully recommend that Plaintiff be awarded $151,184.25 in unpaid overtime.

### C. Spread of Hours Damages

Employees are entitled to spread of hours pay equal to "one additional hour of pay at the basic minimum hourly rate" for each day in which spread of hours exceeds 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(a). Because he worked more than 10 hours each day, Plaintiff is entitled to spread of hours pay every day he worked from March 29, 2017 through March 27, 2022. The following chart shows the spread of hours pay owed to Plaintiff based on the New York minimum wage in effect at the time:

| Time Period | Number of Weeks | Days per Week | Total Days Worked | New York Minimum Wage | Spread of Hours Damages |
|---|---|---|---|---|---|
| Mar. 29, 2017–Dec. 31, 2017 | 39 | 6 | 234 | $10.50 | $2,457.00 |
| Jan. 1, 2018–Dec. 31, 2018 | 52 | 6 | 312 | $12.00 | $3,744.00 |
| Jan. 1, 2019–Dec. 31, 2019 | 52 | 6 | 312 | $13.50 | $4,212.00 |
| Jan. 1, 2020–Mar. 27, 2022 | 116 | 6 | 696 | $15.00 | $10,440.00 |
| | | | | Total: | $20,853.00 |

Accordingly, I respectfully recommend that Plaintiff be awarded $20,853.00 in unpaid spread of hours pay.

### D.    Liquidated Damages

An employee may recover liquidated damages under either the FLSA or NYLL equal to the amount owed for unpaid minimum wage, overtime compensation, and spread of hours compensation. 29 U.S.C. § 216(b); NYLL § 198(1-a).

If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages). Because Defendants did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

Here, the NYLL damages encompass minimum wages, overtime wages, and spread of hours pay. Accordingly, I recommend Plaintiff be awarded $190,657.25 in liquidated damages.

### E.    Prejudgment Interest

Plaintiff seeks prejudgment interest under the NYLL. (Pl. Mem. 22.) *See* NYLL § 198(1-a); *Fermin*, 93 F. Supp. 3d at 30 (calculating prejudgment interest based on unpaid minimum wages, overtime pay, spread-of-hours pay, and misappropriated tips). Prejudgment interest is not available for liquidated damages. *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F.Supp.3d at 49.) Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See, e.g., Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

As Plaintiff's minimum wage, overtime wage, and spread of hours claims under the NYLL cover the period from March 29, 2017 through March 27, 2022, the midpoint—for purposes of calculating prejudgment interest of underpayments—is September 27, 2019. Plaintiff's combined minimum wage, overtime, and spread of hours damages are $190,657.25. Prejudgment interest on those damages at a rate of nine percent per year is $17,159.15. That amount divided by 365 results in daily interest of $47.01. Accordingly, I respectfully recommend that Plaintiff recover prejudgment interest at a daily rate of $47.01 from September 27, 2019 through the entry of the judgment.

### F.    Post-Judgment Interest

Post-judgment interest is mandatory. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment"); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354 (ILG)(VMS), 2021 WL 2188280, at *18 (E.D.N.Y. Feb. 12, 2021), *R&R adopted*, 2021 WL 2184870

(E.D.N.Y. May 28, 2021) (awarding post-judgment interest despite plaintiff's failure to request it). Accordingly, I recommend that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### G. *Fifteen Percent Increase Penalty if Damages not Paid within Ninety Days*

Plaintiff does not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for in Section 198(4) of the NYLL. However, that provision mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). This award is therefore mandatory, regardless of whether Plaintiff requests it or not.

The increase applies only to damages awarded under state law. *Rodriguez*, 2018 WL 7252949 at *11 (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent if Defendants fail to timely satisfy the judgment.

## VI.    Attorneys' Fees and Costs

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1). In the Motion, Plaintiff requested

$9,340.00 in fees and $429.95 in costs for 59.8 hours of work by five employees at Joseph & Norinsberg, LLC.  (Dkt. 21-10.)  Plaintiff's counsel submitted contemporaneous billing records that detailed who worked on this action, their rates, a general description of each task, and the amount of time spent on each task up to March 15, 2024.  (*Id.*)  However, no information was submitted regarding counsel's qualifications, and the Court ordered Plaintiff to provide that information.  (July 10, 2024 Order.)  Plaintiff filed a supplemental motion ("Supplemental Motion," Dkt. 25) for attorneys' fees, requesting $12,095.00 in fees and $504.63 in costs for 68.9 hours of work by six employees and attaching supporting contemporaneous billing records and invoices up to July 15, 2024. (Supplemental Motion.)

A.    *Attorneys' Fees*

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request.  *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted).  "If the Court finds that some of the

time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation" is another "ground[] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

    1. <u>Reasonable Hourly Rate</u>

  Plaintiff requests an hourly rate of $100 for Ricardo Guerra, Carla Martinez, and Luiggi Tapia, $300 per hour for Diego Barros, and $450 per hour for Bennitta Joseph and Jon L. Norinsberg. (Supplemental Motion.)

  Plaintiff does not provide any title or qualifications for Guerra, Martinez, or Tapia, but requests a rate of "$100 per hour for paralegals." (Supplemental Motion.) Therefore, I infer that Guerra, Martinez, and Tapia are paralegals. I find that $70 per hour is a reasonable rate for their work. *See Ahn v. Sun Cleaners Inc.*, No. 19-CV-5919 (DLI) (PK), 2022 WL 586022, at *11 (E.D.N.Y. Feb. 18, 2022), *R&R adopted*, 2022 WL 7186026 (E.D.N.Y. Feb. 1, 2022) (recommending $70 per hour for paralegal with time billed but no description of their credentials); *see Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (same).

  Plaintiff requests $300 per hour for work by Barros, senior counsel at Joseph & Norinsberg. (Barros Decl. ¶ 1.) Barros has six years of experience in labor and employment law. (Supplemental Motion.) I find that a rate of $250 per hour is reasonable for an attorney of that level of experience. *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018 (PKC) (SJB), 2023 WL 6214213, at *8 (E.D.N.Y. Sept. 25, 2023) ("[E]xplaining the typical hourly rates for [attorneys] litigating FLSA/NYLL claims in the

Eastern District of New York range from '$200 to $250 for [attorneys] with four or more years of experience.'") (citing *Garland v. Cohen & Krassner*, No. 08–CV–4626 (KAM)(RLM), 2023 WL 6214213, at *9 (E.D.N.Y. Nov. 29, 2011)); *see also Valdez v. H & S Rest. Operations, Inc.*, 14-CV-4701 (SLT)(MDG), 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016).

Plaintiff requests a rate of $450 per hour for Joseph and Norinsberg, both named partners at Joseph & Norinsberg LLC.  The Eastern District has recently awarded hourly rates ranging from $300 to $450 for partners in FLSA cases.  *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *R&R adopted*, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020).  Due to the relative simplicity of the case, I find that $350 per hour is a reasonable rate.  *See, e.g.*, *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-2520 (FB)(ST), 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 7, 2018), *R&R adopted*, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (reducing the hourly rate of an attorney with over twenty years of experience from $450 to $350 because of "the nature and complexity of the action").

Accordingly, I find that the reasonable rate for Carla Martinez, Ricardo Guerra, and Luiggi Tapia is $70; the reasonable rate for Diego Barros is $250; and the reasonable rate for Bennitta Joseph and Jon K. Norinsberg is $350.

2.   Reasonableness of Time Billed

Plaintiff requested attorneys' fees for 44.6 hours of Guerra's work; 0.5 hours of Martinez's work; 20.6 hours of Barros's work; 2.6 hours of Norinsberg's work; 0.1 hours of Tapia's work, and 0.5 hours of Joseph's work.  (Supplemental Motion.)

"To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'"  *Litkofsky v. P & L Acquisitions, LLC*, No. CV-15-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *R&R adopted*,

2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (quoting *Fox. Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005). Plaintiff submitted contemporaneous time sheets showing work performed in this case from August 22, 2022 to July 15, 2024. (Supplemental Motion.) I find the hours expended to be reasonable.

Applying the reasonable rates to the reasonable hours, I find the following legal fees to be appropriate:

| Position | Name | Rate | Hours | Fee |
|---|---|---|---|---|
| Paralegal | Luiggi Tapia | $70 | 0.1 | $7 |
| Paralegal | Ricardo Guerra | $70 | 44.6 | $3,122 |
| Paralegal | Carla Martinez | $70 | 0.5 | $35 |
| Associate | Diego Barros | $250 | 20.6 | $5,150 |
| Partner | Jon L. Norinsberg | $350 | 2.6 | $910 |
| Partner | Bennitta Joseph | $350 | 0.5 | $175 |
| | | | Total Hours: 68.9 | Total Fees: $9,399 |

Therefore, I respectfully recommend that Plaintiff be awarded $9,399.00 in attorneys' fees.

### B.    Costs

Plaintiff requests $504.63 in costs—$402.00 for the filing fee of the Complaint, $27.95 for "LetterStream-Draft Complaint to Defendants," and $74.68 for motion service. (Supplemental Motion.) I take judicial notice of the filing fee of $402.00. *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $402 filing fee after taking judicial notice of it). Plaintiff's counsel has also provided invoices for "LetterStream-Draft Complaint to Defendants" and the motion service fees. (Supplemental Motion.) Accordingly, I respectfully recommend that Plaintiff be awarded $504.63 in costs.

### VII.    Joint and Several Liability

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685–86

(S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to . . . impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).  As stated *supra*, Illescas and Tropical Restaurant are Plaintiff's employers under the FLSA and the NYLL.  I, therefore, respectfully recommend that Defendants be held jointly and severally liable for their violations of the FLSA and NYLL.

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted in part and denied in part.  Specifically, I find that Defendants failed to pay Plaintiff minimum wages under the NYLL, overtime wages under the NYLL and FLSA, and spread of hours wages under the NYLL.  I find that Plaintiffs lack standing with regard to violations under NYLL §§ 195(1) and 195(3).  I respectfully recommend that damages be awarded as follows:

- $18,620.00  for unpaid minimum wages;

- $151,184.25 for unpaid overtime wages;

- $20,853.00 for spread of hours wages;

- $190,657.25 in liquidated damages;

- $9,399.00 in attorneys' fees; and

- $504.63 in costs

I further recommend that prejudgment interest be awarded at a daily rate of $47.01 from September 27, 2019 until the date of judgment.  In addition, I recommend that post-judgment interest accrue thereafter until payment of the judgment amount, with a fifteen-percent increase in penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

Any written objections to this Report and Recommendation must be filed within 14 days of

service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    August 21, 2024
          Brooklyn, New York